## Schellhouse
## v.
## Norfolk & Western Railway Co.
*[Cite as 4 AOA 193]*

Case No. E-89-8
Erie County, (6th)
Decided June 15, 1990

Thomas J. Murray and Mark R. Williams, for Appellant/Cross-Appellee.

Charles W. Waterfield, for Appellees/Cross-Appellants.

This is an appeal and a cross-appeal from a judgment entry of the Erie County Court of Common Pleas. The judgment entry appealed from awarded thirty-five percent of a jury award to appellant/cross-appellee, Thelma L. Schellhouse, Administratrix of the estate of Victoria A. Vick, deceased.

This case began when appellant/cross-appellee filed a complaint in the Erie County Court of Common Pleas on November 5, 1985, seeking damages resulting from the death of Victoria A. Vick which occurred when the vehicle driven by Vick was struck by a train at a train crossing on June 27, 1984. A jury trial was held and five interrogatories were submitted to the jury. In response to the first interrogatory, the jury stated that $316,000 was the amount necessary to compensate appellant/cross-appellee for the death of Vick. In response to the second interrogatory, the jury found that appellee/cross-appellant Norfolk and Western Railway Company was negligent, and that its negligence was a proximate cause of Vick's death. In response to interrogatory number 3, the jury found that Vick was negligent and that her negligence was a proximate cause of her own death. In response to interrogatory number 4, the jury apportioned the amount of negligence as follows:

Norfolk and Western Railway Company was thirty-five percent negligent; and Vick was sixty-five percent negligent. A fifth interrogatory which read: "Do you find by a preponderance of the evidence that the actions or inactions of defendant, Norfolk and Western Railway Company, constituted actual malice toward Victoria A. Vick?" was answered in the affirmative by the jury. Both appellant/ cross-appellee and appellees/cross-appellants submitted briefs to the trial court following the return of the jury interrogatories. On January 18, 1989 the Erie County Court of Common Pleas filed the judgment entry from which this appeal and cross-appeal are brought.

Appellant/cross-appellee raises five assignments of error which state:

"I. *THE TRIAL COURT ERRED BY ENTERING JUDGMENT IN FAVOR OF APPELLANT FOR THIRTY-FIVE PERCENT OF THE JURY AWARD BECAUSE THE JURY'S FINDING OF ACTUAL MALICE ON THE PART OF APPELLEE REMOVES THE DEFENSE OF CONTRIBUTORY NEGLIGENCE AS A MATTER OF LAW AND ENTITLES APPELLANT TO A JUDGMENT IN THE AMOUNT OF $316,000.*

"II. *THE COURT PROPERLY SUBMITTED THE ISSUE OF ACTUAL MALICE TO THE JURY.*

"III. *THE TRIAL COURT ERRED BY PERMITTING THE RAILROAD, BY WAY OF A DEMONSTRATION, TO BLOW THE TRAIN WHISTLE ON THE COURTHOUSE GROUNDS FOR THE BENEFIT OF THE JURY.*

"IV. *THE TRIAL COURT ERRED BY PERMITTING DEFENDANT'S EXPERT, FRED BENSON, TO RENDER EXPERT OPINIONS WHICH WERE WITHOUT FOUNDATION IN THE EVIDENCE AND WHICH WERE PATENTLY SPECULATIVE IN NATURE.*

"V. *DEFENDANT RAILROAD COMMITTED REVERSIBLE ERROR BY ELICITING FROM THE INVESTIGATING POLICE OFFICER, KEITH CLIPSON, THE FACT THAT HE WOULD HAVE ISSUED A CITATION TO MS. VICK HAD SHE LIVED.*"

Cross-appellants/appellees raise two assignments of error which state:

"I. THE TRIAL COURT ERRED IN ENTERING JUDGMENT FOR WRONGFUL DEATH AND APPORTIONING DAMAGES IN FAVOR OF THE ESTATE OF VICTORIA VICK, THE PLAINTIFF-APPELLANT, WHERE THE JURY FOUND BY A PREPONDERANCE OF THE EVIDENCE THAT THE PERCENTAGE OF NEGLIGENCE OF THE DECEDENT, VICTORIA VICK, WHICH DIRECTLY AND PROXIMATELY CAUSED HER DEATH WAS 65% WHILE THAT OF THE DEFENDANT-APPELLEE, NORFOLK AND WESTERN RAILWAY COMPANY WAS ONLY 35%, WHICH JUDGMENT IS IN CONTRAVENTION OF SECTION 2315.19, OHIO REVISED CODE.

"II. THE TRIAL COURT ERRED IN DENYING DEFENDANT-APPELLEES' MOTION FOR DIRECTED VERDICT WITH RESPECT TO PLAINTIFF-APPELLANT'S THIRD CAUSE OF ACTION FOR PUNITIVE DAMAGES, CHARGING THE JURY ON MALICE, AND SUBMITTING AN INTERROGATORY TO THE JURY ON THE QUESTION OF ACTUAL MALICE."

We begin by considering the second assignment of error raised by appellees/cross-appellants. Appellees/cross-appellants assert that they were entitled to a directed verdict on the issue of punitive damages and that their objection to the submission of interrogatory five to the jury should have been sustained. Appellees/cross-appellants acknowledge that appellant/cross-appellee originally filed a complaint which contained three counts. The first count alleged that Vick died as a result of the negligence of appellees/cross-appellants. The second count alleged that appellant/cross-appellee was entitled to damages for physical pain and mental anguish suffered by Vick before she died. The third count alleged that the proximate cause of Vick's death was the "willful, reckless, and grossly negligent conduct of appellees/cross-appellants." Appellees/cross-appellants point out that the second count of the complaint was dismissed when the trial court granted appellees/cross-appellants a directed verdict at trial. Therefore, all that remained was an action for wrongful death. Appellees/cross-appellants argue that appellant/cross-appellee was not entitled to damages for malice in a wrongful death action. We agree. In 1978, the Supreme Court of Ohio stated:

"The language of R.C. 2125.02 is clear. Damages in wrongful-death actions are limited to those for 'the pecuniary injury resulting from such death.' That is, they are limited to damages for 'loss of money, or something by which money or something of money value may be acquired' * * * and 'which have been cut off by the premature death of the person from whom they would have proceeded.'* * * Since punitive damages are 'assessed over and above that amount adequate to compensate an injured party'* * * they are, by definition, not available in a wrongful-death action." *Rubeck* v. *Huffman* (1978), 54 Ohio St. 2d 20, 22-23. (Citations omitted.) The Supreme Court of Ohio indicated in *Rubeck* v. *Huffman* that punitive damages would only be available if the plaintiff could establish personal injury or property loss which survived the decedent. The Supreme Court stated that if the plaintiff in *Rubeck* v. *Huffman* had "* * * alleged and proved that the deceased suffered personal injury or property loss as a result of the collision and before he died, the trial court's award of punitive damages should be upheld." *Id.* at 23. However, the *Rubeck* v. *Huffman* court ruled that punitive damages were not available to Rubeck because the record contained no evidence that the decedent survived the collision to suffer any pain or that the decedent held title to the vehicle which

was damaged in the collision. *Id.* at 23-24. Like the record in *Rubeck* v. *Huffman* the record in this case does not contain any evidence that Vick survived the collision, or that the vehicle which was damaged was her property. Appellant/cross-appellee does not contest the dismissal of the survivorship claim in this case. Instead, appellant/cross-appellee argues that this court should award punitive damages and prevent appellees/cross-appellants from asserting contributory negligence as a defense. Appellant/cross-appellee cites a previous decision from this court, *Case* v. *Norfolk & Western Ry. Co.* (Sept. 16, 1988), Sandusky App. No. S-87-43, unreported, to support appellant/cross-appellee's assertion that comparative negligence should not be a defense available to a party responsible for malice. However, *Case* v. *Norfolk & Western Ry. Co.* does not support appellant/cross-appellee's assertion. *Case* v. *Norfolk & Western Ry. Co.* involved an appeal from a trial court's ruling which granted summary judgment to the railroad company. The *Case* v. *Norfolk & Western Ry. Co.* court reversed the lower court's ruling, stating that material questions of fact remained regarding appellant's claim for wrongful death and survivorship claim. At the time of the reversal the case had never been to trial and had never been presented to a jury. No apportionment of negligence had been ascertained. The *Case* v. *Norfolk & Western Ry. Co.* court clearly stated that: "Punitive damages are not available in a wrongful death action." *Id.* The *Case* v. *Norfolk & Western Ry. Co.* court also indicated that comparative negligence would apply to determine whether a plaintiff in a wrongful death action could recover damages. Finally, the *Case* v. *Norfolk & Western Ry. Co.* court stated that if the jury found facts sufficient to support a survivorship claim, punitive damages could be awarded for that claim. This case involves an action for wrongful death only as all survivorship actions were dismissed. Since wrongful death is a negligence cause of action comparative negligence rules set forth in R.C. 2315.19 apply. See *Labadie* v. *Semler* (June 1, 1990), Lucas App. No. L-89-132, unreported. Appellant/cross-appellee's additional argument that this court should not allow appellees/cross-appellants to employ the defense of comparative negligence since it would be "patently absurd" to allow an intentional wrongdoer to assert comparative negligence as a defense only in cases of instantaneous death is also unpersuasive. This court is bound by valid statutory law and by precedent from the Supreme

Court of Ohio. The legislature of Ohio specifically drafted the wrongful death statute to prohibit the recovery of punitive damages. The Supreme Court of Ohio has ruled that punitive damages are not available in a wrongful death action, absent evidence to support a survivorship claim. Accordingly, the issue of malice should not have been submitted to the jury. Appellees/cross-appellants' second assignment of error is well-taken.

As we have already noted, R.C. 2315.19 is applicable in a wrongful death action to reduce or prevent recovery of a damage award. *Id.* R.C. 2315.19(C) (effective June 20, 1980)[1] states in pertinent part:

"After the court makes its findings of fact or after the jury returns its general verdict accompanied by answers to interrogatories, the court shall diminish the total amount of damages recoverable by an amount that is proportionately equal to the percentage of negligence of the person bringing the action, which percentage is determined pursuant to division (B) of this section. If the percentage of the negligence of the person bringing the action is greater than the total of the percentages of the negligence of all other persons from whom recovery is sought, which percentages are determined pursuant to division (B) of this section, the court shall enter a judgment for the persons against whom recovery is sought."

Since the response of the jury to the interrogatories submitted to the jury in this case indicate that the percentage of Vick's negligence exceeded the percentage of the negligence of appellees/cross-appellants, the trial court erred when it awarded damages to appellant/cross-appellee. Appellees/cross-appellants' first assignment of error is well taken. Appellant/cross-appellee's first assignment of error is not well-taken.

Appellant/cross-appellee's second assignment of error does not comport with App. R. 16(A)(2) and is not well-taken.

Appellant/cross-appellee's third assignment of error raises the question of whether the trial court erred when it allowed appellees/cross-appellants to assemble the jury outside the courthouse for the purpose of hearing one blast of the train whistle which had been in the engine of the train which collided with Vick's automobile. Appellant/cross-appellee argues that the dissimilarities in the circumstances of the demonstration versus the circumstances at the scene of the accident were so great that the dissimilarities could only

create confusion for the jury and result in "potential prejudice to the plaintiff." Appellant/cross-appellee gives a detailed list of the dissimilarities. For instance, testimony at trial indicated that when the train whistle was sounded at the scene of the accident, Vick had all the windows in her automobile rolled up, was listening to the radio, and was engaging in the normal concentration required for driving. In contrast, when the jury heard the single blast of the train whistle on the courthouse lawn, the jury was standing in the open air, and was directing all of its attention to listening to the whistle. Appellant/cross-appellee acknowledges that the trial court rendered instructions to the jury to observed the conditions of the tests because the test might or might not duplicate the events of the accident. In addition, the jury was instructed that it was a question of fact for the jury to decide whether the test had any weight or application to the facts of the case. However, appellant/cross-appellee states that the instructions given to the jury were not adequate to overcome the potential prejudice to appellant/cross-appellee.

This court's standard of review when considering a trial court's ruling on the admissibility of evidence is abuse of discretion. *Columbus* v. *Taylor* (1988), 39 Ohio St. 3d 162, 164. Our review of the record indicates that the trial court did not abuse its discretion when it permitted appellees/cross-appellants to take the jury outside the courthouse to listen to the sounding of one blast from the train whistle. The trial court properly instructed the jury to note the conditions of the test and to draw its own conclusions as to whether or not the conditions of the test were similar to the conditions which existed at the time of the accident. Appellant/cross-appellee has failed to demonstrate that the jury instruction in question was not effective. Appellant/cross-appellee has not referred this court to any evidence of prejudice. Rather, appellant/cross-appellee refers to the potential prejudice which resulted from this test. Because there was no abuse of discretion and no showing of prejudice, appellant/cross-appellee's third assignment of error is not well-taken.

Appellant/cross-appellee argues in her fourth assignment of error that the testimony of Fred Benson, an expert called by appellees/cross-appellants at trial should have been stricken from the record. Appellant/cross-appellee notes that Ohio law requires that an expert opinion be based on facts. Appellant/cross-appellee asserts that Fred Benson had no evidence on which to base his

expert opinion that Vick failed to obey the stop sign, observed the oncoming train before she reached the tracks, and was unable to stop in time. Appellant/cross-appellee argues that the admission of Fred Benson's testimony created a "grave risk" that the jury would be misled.

We agree that Ohio law requires the "disclosure of the underlying facts or data" which support an expert's opinion. Evid. R. 705. However, our review of the record does not support appellant/cross-appellee's contention that the underlying facts and data which supported Fred Benson's testimony were never disclosed. Fred Benson testified extensively regarding measurements which he took at the scene of the accident, regarding his review of the photographs which were taken by the police at the scene of the accident on the day the accident occurred, regarding his review of the crossing devices which were in use at the scene of the accident on the day the accident occurred, regarding the methods he employed to make a determination of sight distances in both the east and west directions at the scene of the accident, and regarding his review of the national standards required for railroad crossings and appellee/cross-appellant's conformity to those standards as well as his familiarity with pleadings and depositions filed in this case. All of this testimony was elicited from Fred Benson before he was asked whether he had an opinion to a reasonable degree of scientific certainty regarding the proximate cause of the accident. Appellant/cross-appellee cross-examined Fred Benson at length regarding the factual underpinnings of Benson's opinion. Appellant/cross-appellee's fourth assignment of error is not well-taken.

Appellant/cross-appellee's fifth and final assignment of error states that appellees/cross-appellants committed reversible error because Police Officer Clipson testified on direct examination that he would have issued a citation to Vick if she had survived the accident. Because the function of this court is to review errors committed by a lower court, we will construe this assignment of error as an assertion that the trial court erred by failing to prohibit the testimony of Officer Clipson that he would have issued a citation to Vick if she had survived. Appellant/cross-appellee asserts that the testimony in question was a violation of a motion *in limine* which had been granted by the trial court. The motion *in limine* in question was filed on November 4, 1987. The motion *in limine* contained a request that appellees/cross-appellants be prohib-

ited from eliciting testimony from any witness that Police Officer Clipson had concluded in his police report that a contributing factor to the accident was the failure of Vick to stop at a stop sign. The testimony objected to by appellant/cross-appellee occurred in the following context. Counsel for appellees/cross-appellants asked:

"And therefore under the circumstances if a driver at the point of fifteen feet from the rail could not see safely to cross, would they, in your opinion, be in violation of the ordinance?"

The ordinance to which counsel referred was a local ordinance requiring a driver to stop within fifty but not less than fifteen feet from a railroad crossing before proceeding. In response to the question, Officer Clipson stated: "Yes sir, if the deceased had survived this accident, I would have given her a summons."

Appellant/cross-appellee did not object at the time the testimony was elicited, did not request a mistrial, and did not request a limiting instruction. Appellant/cross-appellee did object when Officer Clipson was asked on redirect: "And I heard you say, that if she had survived, you would have cited Ms. Vick?" The trial court sustained appellant/cross-appellee's objection and instructed the jury to disregard the information. To the extent that any violation of the motion *in limine* occurred, the trial court acted properly. Appellant/cross-appellee's fifth assignment of error is not well-taken.

Therefore, this court finds that the trial court erred when it awarded damages to appellant/cross-appellee. The judgment of the Erie County Court of Common Pleas is reversed and, pursuant to App. R. 12(B), judgment is entered in favor of appellees/cross-appellants. Appellant/cross-appellee is ordered to pay the costs of this appeal.

*Judgment reversed.*

HANDWORK, P.J., and GLASSER, J., concur.

ABOOD, J., dissent in part and concur in judgment only in part.

ABOOD, J., dissent as to appellant/cross-appellee's first assignment of error, dissent as to appellees/cross-appellants' first assignment of error, dissent in part as to appellees/cross-appellants' second assignment of error, and concur in judgment only as to the remaining assignments of error.

---

[1] R.C. 2315.19 has since been amended. The new version is not applicable in this case.